UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Grand Encampment of Knights Templar Of the United States of America, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Conference of Grand Masters of Masons In North America, Inc., et al., <br><br> Defendants. | Case No. 1:11-cv-00463-JD |

## AMENDED DECLARATION

Plaintiffs the Grand Encampment of Knights Templar of the United States of America and the Grand Commandery of Knights Templar of New Hampshire, by and through their counsel, Orr & Reno, P.A., submit the following Amended Declaration against Defendants Conference of Grand Masters of Masons in North America, Inc., G. Santy Lascano, David Owen, Ed Bosquet, Glenn E. Almy, Ronald G. Andress, Richard L. Swaney, William R. Miller and Donald H. Yankey:

### Introduction

1. This case involves Defendant Conference of Grand Masters of Masons in North America, Inc. and several individuals, including the members of the Commission on Information for Recognition and current or former officers of Grand Lodges of Oregon, Washington, Oklahoma, Alabama, Illinois and Kentucky, conspiring to interfere with the Plaintiff Grand Encampment of Knights Templar of the United States of America's contractual relationships with Grand Commanderies of Knights Templar and individual Sir Knights through the use of defamatory misrepresentations. Consequently,

the Grand Encampment of Knights Templar of the United States of America and the Grand Commandery Knights Templar of New Hampshire assert claims of civil conspiracy, interference with contractual relationships, defamation, and intentional and negligent misrepresentation against the Defendant organization and individuals.

## Parties

2.  Plaintiff Grand Encampment of Knights Templar of the United States of America (the "Grand Encampment") is a voluntary association and fraternal organization that traces its roots to the 11th century. In February 1905, the United States Congress recognized the Grand Encampment and bestowed it with corporate status, including the right to hold and manage gifts and devises provided to it. The Grand Encampment's mailing address is c/o Sir Knight ("S.K.") Lawrence E. Tucker, 5909 West Loop South, Suite 495, Bellaire, Texas 77401-2402. The Grand Encampment has significant ties to New Hampshire, which are described in the succeeding paragraph.

3.  Plaintiff Grand Commandery of Knights Templar of New Hampshire (the "Grand Commandery") is a voluntary association and fraternal organization. It is deemed a corporation pursuant to RSA 292:12-14. The Grand Commandery's mailing address is c/o S.K. Dennis A. Sheridan, P.O. Box 621, Littleton, New Hampshire 03561-0621. S.K. Sheridan, the Grand Recorder of the Grand Commandery, is the designated New Hampshire representative of the Grand Encampment and the personal representative of Grand Encampment Grand Master S.K. William H. Koon, II. All past Grand Commanders of the Grand Commandery and the current Grand Commander and his three senior officers are members of the Grand Encampment. The Grand Commandery also boasts the Chairman of the Grand Encampment's Committee on Templar Jurisprudence,

a Trustee of the Grand Encampment's Permanent Fund and a member of the Grand Encampment's Committee on Educational Foundation.

    4.    Defendant Conference of Grand Masters of Masons in North America, Inc. ("Conference") is a voluntary association and fraternal organization.  It is a corporation of the State of Missouri.   Its mailing address is c/o Secretary/Treasurer Glenn Means,  2019 Northeast Avanti Court, Blue Springs, MO 64029-9368.

    5.    Defendant G. Santy Lascano is the Past Grand Master of the Grand Lodge of Free and Accepted Masons of Washington ("GLWA"), a voluntary association and fraternal organization.  His mailing address is 123 Alder Street, Everett, WA  98203.

    5.    Defendant David Owen is the Grand Secretary of GLWA.  His mailing address is 1941 Summit Lake Shore Road, Northwest, Olympia, WA 98502.

    6.    Defendant Ed Bousquet is the Past Grand Master of the Grand Lodge of Free and Accepted Masons of Oregon ("GLOR"), a voluntary association and fraternal organization.  His mailing address is 62649 Erickson Road, Bend, OR  97701-9704.

    7.    Defendant Glenn E. Almy is the Grand Master of the Grand Lodge of Ancient Free and Accepted Masons of Oklahoma ("GLOK"), a voluntary association and fraternal organization.  His mailing address is 102 South Broad Street, P.O. Box 1019, Guthrie, OK  73044.

    8.    Defendant Ronald G. Andress is the Grand Master of the Grand Lodge of Free and Accepted Masons of Alabama ("GLAL"),  a voluntary association and fraternal organization.  His mailing address is 2509 Lakewood Circle, Tuscaloosa, AL 35405

9. Defendant Richard L. Swaney is the Grand Master of the Grand Lodge of Ancient Free and Accepted Masons of Illinois, a voluntary association and fraternal organization. His mailing address is P.O. Box 5, Vienna, Il 62995.

10. Defendant William R. Miller is the Sovereign Grand Inspector General for the State of Washington of the Ancient Accepted Scottish Rite, Southern Jurisdiction ("AASRSJ"), and Grand Minister of State of the AASRSJ. His mailing address is 30725 21ST Avenue, Southwest, Federal Way, WA 98023.

11. Defendant Donald H. Yankey is the Grand Master of the Grand Lodge of Ancient Free and Accepted Masons of Kentucky, a voluntary association and fraternal organization. His mailing address is 6599 East Manslick, Louisville, Kentucky 40228.

### Jurisdiction and Venue

12. This Court has jurisdiction over the subject matter of this proceeding pursuant to RSA 491:7. Venue is proper in Grafton County Superior Court because S.K. Sheridan resides in the jurisdiction, some of the Defendants' conduct occurred in Grafton County and the impact of Defendants' conduct reached into Grafton County.

### Knights Templar, Grand Encampment and Grand Commandery

13. The Knights Templar is a chivalric Masonic, Christian-oriented, voluntary and fraternal association based on an ancient organization that was founded in the 11th century. It operates on national, state and local levels, and annually raises millions of dollars for charitable purposes, including the support of Masonic-related youth groups. Its principal charities, The Knights Templar Eye Foundation, the Knights Templar Educational Foundation, and the Holy Land Pilgrimage Fund are 501(c)(3) entities and

dependent upon contributions chiefly from members of the Order. The charities draw upon the officers of the Grand Encampment for their governance.

14. The Grand Encampment is the national level of the Knights Templar. It promulgates the laws governing the state and local level organizations. The three highest ranking officers are the Grand Master, the Deputy Grand Master and the Grand Generalissimo. The state level is the Grand Commandery and local level organizations are known as Commanderies. The Grand Commandery was established in May 1826.

15. Pursuant to the Constitution of the Grand Encampment, the Grand Encampment "has supreme legislative, judicial and executive power and jurisdiction over the Orders of the Red Cross, Knights of Malta and Knights Templar within the United States of America and geographical regions over which the United States exercises jurisdiction." The Grand Master is bestowed with the "power and authority to do and perform all such acts as he may deem for the interests of Templary and which are not contrary to [Templar law]." The specific responsibilities vested in the Grand Master include the following:

(a) To maintain a watchful supervision over all Commanderies, Grand, Constitutent and Subordinate; to see that all the Constitutional enactments, the Statutes, Edicts, Rules and Regulations of the Grand Encampment are duly and promptly obeyed . . .[;]

(b) To visit and preside over any Grand, Constituent or Subordinate Commandery[;] . . . [and]

(c) [T]o issue his proxy to any such member authorizing him to visit, inspect and preside over any Grand Commandery . . . .

The Grand Master is also President of the Knights Templar Eye Foundation, Inc.

16. The Grand Commandery and Commanderies in each state are charged with collecting certain charitable funds, including contributions to the Knights Templar

5

Educational Foundation, the Holy Land Pilgrimage Fund and the Knights Templar Eye Foundation, Inc. Each Commandery collects dues from its individual Sir Knights and a portion of the funds are forwarded to the Grand Encampment.

## GRAND PRIORY OF SCOTTISH REFORMED AND RECTIFIED RITE

17. The Scottish Rectified Rite (the "RER") is the world's oldest continuously extant chivalric Masonic Order. The RER's governing bodies are called Great Priories. On January 22, 2011, in Marseilles, France, a patent was granted to the Grand Encampment establishing the Eleventh Province of the RER. The Grand Encampment's Grand Master was installed as the Master of the Grand Priory of the RER of the United States of America. The chief officers of the Grand Encampment also serve as the chief officers of the Grand Priory of the RER of the United States of America.

18. By these acts, the Great Priory of Occitania conferred upon the Grand Encampment the right to practice, and to bestow, the 4th through 6th Degrees of the Rectified Scottish Right.[1] The attendees at the ceremony included members of the following organizations: National Grand Lodge of France, American Canadian Grand Lodge, United Grand Lodge of England, and the Grand Lodges of Illinois, Indiana, New York, Ohio, Tennessee and Texas, all of them widely acknowledged as regular[2] and recognized.

## THE DEFAMATORY AND CONSPIRATORIAL CONDUCT

19. In February 2011, Defendant Conference's Commission on Information for Recognition ("Commission") declared that:

---

[1] The 4th through 6th degrees are an esoteric and spiritual form of Templary. The Constitution of the Grand Encampment provides that the degrees can be conferred only through the Grand Encampment.
[2] In this context, "regular" means proper and established by the then-lawfully empowered body.

> the Great Priory of Occitania is an irregular body. It was self-created in 1995 by former members of the Great Priory of Gauls, which was declared irregular by the Grande Loge Nationale Francaise ["GLNF"], and its members expelled.[3]

The Commission, of which the Grand Commandery is a member, went on to state that:

> [t]his Commission does not normally concern itself with the affairs of appendant bodies; however, it is concerned about the negative impact on the established system of regularity in North American Freemasonry that may be caused by members of our Grand Lodges setting a precedent by becoming affiliated with organizations that receive their charter from an irregular source.

20. The falsity of this statement was acknowledged by no less an authority than Sir Knight and Brother Jean-Claude Tardivat, who served as the Deputy Grand Master of the GLNF until January of this year. S.K. Tardivat confirmed that no members of Great Priory of Occitania had been expelled from the GLNF; rather, some members of the Grand Priory had voluntarily relinquished their membership in that body. Moreover, the Commission's limited purpose had been stated by the committee appointed in 1951, by Most Worshipful Brother Reginald E. Goldsmith, Grand Master of the Grand Lodge of New Hampshire, then Chairman of the Conference:

> Purpose: It shall be the duty of the Commission to assemble and collate information on Grand Lodges as a service to the Member Grand Lodges of this Conference.

Brother Goldsmith was appointed one of the original members of the Commission the following year. To render an opinion concerning an entity other than a Masonic Grand Lodge is beyond the Commission's purview.

---

[3] In this context, "irregular" means falsely or not established by the then-lawfully empowered body.

21. Before the issuance of the Commission's report, Defendant Miller published a "Fact Sheet About the Three Masonic Templar Bodies" in which he declared:

> [t]he problem that arises is that the Grand Encampment has made it known that it intends to create "lodges" in every jurisdiction where it has Grand Commanderies. To confer the C.B.C.S. degrees. Masonic degrees being conferred in every State, under a charter issued by an irregular Masonic body!
> The allegation is entirely unfounded because the Grand Encampment did not

receive patents from an irregular source and because it has neither formed nor expressed an intention to form "lodges" within the various States.

22. Defendant Miller distributed this and similar documents at multiple functions, including Masonic Week in Alexandria, Virginia, in February, 2011, whose participants included several New Hampshire Masons and Sir Knights. On or about March 26, 2011, Defendant Miller presented the documents to Defendant Lascano and the Officers of the Grand Commandery of Washington. On information and belief, Defendant Miller made a similar presentation to Defendant Bosquet. On information and belief, Defendant Miller's purpose in distributing the documents and making the presentations was to motivate and encourage others to disseminate his claims throughout the Grand Commanderies of all fifty states, including New Hampshire.

23. On April 5, 2011, Defendant Lascano issued an edict in which he accused the Grand Encampment of "being associated with an irregular Masonic body in France" and therefore, being "equally irregular." The accusations are false because the Great Priory of Occitania is a regular Masonic body. Importantly, the accusations are devastating because Free and Accepted Masons and Sir Knights are prohibited from interacting with irregular bodies and individuals. In fact, Defendant Lascano's edict concludes as follows:

8

> I therefore direct all Master Masons in the Jurisdiction of Grand Lodge of Washington, Free and Accepted Masons to refrain from any interaction with the Grand Encampment Knights Templar of the USA until this situation is resolved. Any known actions reference this matter by the brethren of this jurisdiction shall be reported to this office immediately. Masonic disciplinary actions will be imposed on any violators of this edict and will be subject to suspension or expulsion from this jurisdiction.

24. On April 25, 2011, Defendant Bousquet issued an edict that surpassed Defendant Lascano's edict. Defendant Bousquet's edict states as follows:

> I am declaring the Grand Priory of the Reformed and Rectified Rite of the United States of America irregular and clandestine body in Oregon. Therefore, until the situation is resolved, an Oregon Mason who holds membership in any Masonic Body within, and/or governed by the Jurisdiction of the [GLOR] is hereby directed to refrain from any interaction with the Grand Priory of the Reformed and Rectified Rite of the United States of America or any member or members of this organization. This means no Oregon Mason may communicate on Masonic subjects formally or informally by the imparting or interchange of thoughts, opinions or information of speech, writing or signs. Any violation of this edict will result in disciplinary action that may result in suspension or expulsion from the Fraternity.

25. By letter dated April 20, 2011, Defendant Almy sent a letter to Defendant Bosquet lauding his "decisive leadership" on the issue. The letter states that members of the Grand Encampment will be barred from "the upcoming Spring meeting of the Grand Commandery of Oklahoma." The letter also includes the following directives and restrictions:

> I am directing Sir Knight Dwayne Dixon, Right Eminent Grand Commander [of the Grand Commandery Knights Templar of Oklahoma], to not permit any representatives of the Grand Encampment of Knights Templar, or any other Sir Knight, who belongs to this irregular body, to attend the upcoming Spring meeting of the Grand Commandery of Oklahoma. I will not permit someone who has violated the obligation of a Master Mason to sit in a tiled meeting in Oklahoma.

Thus, the letter falsely accuses every member of the Grand Priory of the RER of the United States of America of having violated his Masonic obligations, and is especially devastating because it invites scorn and detestation from other Masons.

26. Defendant Almy's letter also states that the GLOK "endorses, supports, and offers whatever assistance is needed in your effort to conclude the matter in a satisfactory manner." A copy of the letter was provided the Grand Master of each state, including New Hampshire.

27. By email dated May 6, 2011, Defendant Owen contacted the Grand Secretaries of the Grand Lodges of all fifty states, including New Hampshire. The email states as follows:

> The GM of the [GLWA] has issued an edict declaring the Great Grand Priory of Occitania as irregular, and the Grand Priory of the Reformed and Rectified Rite of the United States of America, which was formed out of the Great Priory of Occitania, is also irregular. The situation has consumed way too much of my time but it is necessary. I am wondering how many other Grand Lodges have taken some form of action against the Grand Priory of the Reformed and Rectified Rite of the United States of America, or are planning to take action.
>
> This is truly a National Masonic problem.

28. By letter of May 29, 2011, Defendant Andress claimed wrongly that:

> several Alabama Masons have been contacted and offered membership in the subject irregular body.
>
> … it is therefore my decision and ruling that the "Grand Priory of the Reformed and Rectified Rite of the United States" is irregular by Masonic recognition standards and that no member of this Alabama Grand Jurisdiction shall have any interaction with this irregular body.

29. By letter of July 8, 2011, Defendant Swaney declared the Grand Priory of the RER of the United States of America "irregular" and decreed that no Illinois Mason "shall have any interaction with nor become a member of this irregular body."

Defendant Swaney went on to direct that the letter be made a part of the permanent record of each Masonic Lodge in Illinois.

30. By Grand Masters Decision dated July 26, 2011, Defendant Yankey not only reported the Commission's report, but also "declare[d] the Grand Priory of the Reformed and Rectified Rite of the United States to be irregular . . . ." The Grand Masters Decision further "direct[ed] that no member of The Grand Lodge of Kentucky, F. & A.M. shall heretofore have any interaction with this body."

31. Upon information and belief, the purpose of the above-described conduct of Defendants Conference, Miller, Lascano, Bousquet, Almy, Owen, Swaney and Yankey was to motivate and encourage others to disseminate the claim of "irregularity" throughout the Grand Commanderies of all fifty states, including New Hampshire. Defendants knew such a claim would result in the Grand Commanderies being prohibited from interacting with Plaintiffs the Grand Encampment and the Grand Commandery.

## CAUSES OF ACTION

### Count I
### Intentional Interference with Contractual Relations

32. The Grand Encampment and the Grand Commandery reassert all of the facts alleged in paragraphs 1-31 above.

33. The elements of intentional interferance with contractual relations are: (a) there must be a contractual relationship between the plaintiff and a third party; (b) the defendant must be aware of the contractual relationship; (c) the defendant must intetntionally and unlawfully interfere with the relationship; and (d) the plaintiff must be damaged by the interferance. *Singer Asset Finance Co., LLC v. Wyner*, 156 N.H. 468, 478 (2007).

34. When the Defendants falsely accused the Grand Encampment of being irregular they intentionally interfered with the Grand Encampment's and the Grand Commandery's contractual relationships with their Sir Knights. Specifically, the false accusations impaired each organization's likelihood and ability to collect dues from its Sir Knights, and rendered it impossible for the Grand Encampment to oversee funds collected for the charitable purposes described in paragraph 16 above.

35. The Grand Encampment and the Grand Commandery are entitled to compensation in the form of monetary damages, plus attorneys' fees and costs, for the damages suffered as a result of Defendants' intentional interference with contractual relations.

### Count II
### Intentional Misrepresentation

36. The Grand Encampment and the Grand Commandery reassert all of the facts alleged in paragraphs 1-35 above.

37. When Defendants made the misrepresentations referenced in paragraphs 19-30 above, they made the misrepresentations with knowledge of their falsity or with conscious indifference to their truth with the intention of causing other Masons and Sir Knights to rely on them. The Grand Encampment and the Grand Commandery were damaged by the intentional misrepresentations.

38. The Grand Encampment and the Grand Commandery are entitled to compensation in the form of monetary damages, plus attorneys' fees and costs, for its damages suffered as a result of Defendants' intentional misrepresentations.

## Count III
## Negligent Misrepresentation

39. The Grand Encampment and the Grand Commandery reassert all of the facts alleged in paragraphs 1-38 above.

40. Defendants made the misrepresentations referenced in paragraphs 19-30 above negligently. The Grand Encampment and the Grand Commandery were damaged by the negligent misrepresentations.

41. The Grand Encampment and the Grand Commandery are entitled to compensation in the form of monetary damages, plus attorneys' fees and costs, for its damages suffered as a result of Defendants' negligent misrepresentations.

## Count IV
## Civil Conspiracy

42. The Grand Encampment and the Grand Commandery reassert all of the facts alleged in paragraphs 1-41 above.

43. When Defendants made the misrepresentations and engaged in the conduct referenced in paragraphs 19-30 above, they engaged in a civil conspiracy; that is, they were two or more persons who agreed to, and achieved, an unlawful object and committed one or more overt acts. The Grand Encampment and the Grand Commandery were damaged as a proximate result of the civil conspiracy.

44. The Grand Encampment and the Grand Commandery are entitled to damages resulting from Defendants' civil conspiracy, including interest and all costs and attorneys' fees as have been incurred by the necessity of this action.

## JURY TRIAL DEMAND

45. The Grand Encampment and the Grand Commandery assert their rights to a jury trial on their causes of action.

WHEREFORE, the Grand Encampment of Knights Templar of the United States of America and the Grand Commandery of Knights Templar of New Hampshire respectfully request that the Honorable Court:

A. Award monetary damages, including attorneys' fees and costs, to the Grand Encampment of Knights Templar of the United States of America and the Grand Commandery of Knights Templar of New Hampshire in an amount determined by a jury; and

B. Grant such additional relief as justice requires.

Respectfully submitted,

GRAND ENCAMPMENT OF
KNIGHTS TEMPLAR OF THE UNITED
STATES OF AMERICA; and GRAND
COMMANDERY OF KNIGHTS
TEMPLAR OF NEW HAMPSHIRE

By their attorneys,

Dated:  October 24, 2011            By: /s/ Michael D. Ramsdell
                                    Michael D. Ramsdell (Bar No. 2096)
                                    Orr & Reno, P.A.
                                    One Eagle Square, P.O. Box 3550
                                    Concord, NH  03102-3550
                                    (603) 223-9185
                                    mramsdell@orr-reno.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day forwarded via ECF to all counsel of record.

/s/ Michael D. Ramsdell
Michael D. Ramsdell