**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| GRAND ENCAMPMENT OF KNIGHTS TEMPLAR OF THE UNITED STATES OF AMERICA, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>CONFERENCE OF GRAND MASTERS OF MASONS IN NORTH AMERICA, INC., et al., )<br><br>Defendants. ) | **Case No.: 1:11-cv-00463-JD** |

<u>**DEFENDANT ALMY'S OBJECTION TO PLAINTIFFS'**</u>
<u>**MOTION TO CONDUCT JURISDICTIONAL DISCOVERY**</u>

**I.    <u>Introduction</u>**

Plaintiffs, Grand Encampment of Knights Templar of the United States of America (the "Grand Encampment") and Grand Commandery of Knights Templar of New Hampshire ("the New Hampshire Grand Commandery") (collectively, "Plaintiffs"), filed a Writ of Summons and Declaration against eight defendants (collectively, "Defendants"), including Mr. Almy, in the New Hampshire Superior Court in August, 2011 (the "Writ" and "Declaration") alleging civil conspiracy, interference with contractual relationships and intentional and negligent misrepresentation against each of the defendants.  Declaration at ¶ 1.  Defendant Almy filed a Motion to Dismiss this action as it pertained to him.  ECF 18; 18-1.  Plaintiffs have now filed a Motion to Conduct Jurisdictional Discovery.  ECF 23.  This Motion, however, fails to allege any facts that could be discovered from Mr. Almy or any other party that could lead to this Court asserting jurisdiction over Mr. Almy.  Accordingly, Plaintiffs' Motion to Conduct Jurisdictional

Discovery must be denied as to Mr. Almy, and this action as it pertains to Mr. Almy should be dismissed.

## II.   <u>Facts Alleged by Plaintiffs</u>

Plaintiffs' Motion for Jurisdictional Discovery combines the facts alleged against all eight defendants and appears to argue that the cumulative effects of these alleged contacts with New Hampshire will be sufficient to establish jurisdiction.  However, in order for this Court to grant Plaintiffs the right to seek Jurisdictional Discovery as to Mr. Almy, Plaintiffs must first establish a "colorable case of jurisdiction" over Mr. Almy individually, based upon his contacts with New Hampshire and not those of the organization or other Defendants as a whole. Plaintiffs allege only two facts that apply to Mr. Almy.

First, Plaintiffs allege that Mr. Almy "sent a letter to Defendant Bosquet declaring the Grant Encampment irregular and barring members of the Grand Encampment and the Grand Commandery from attending meetings in Oklahoma" and stating that the Grand Lodge of Oklahoma "endorses, supports, and offers whatever assistance is needed in your effort to conclude the matter in a satisfactory manner."  Second, Plaintiffs allege a copy of Defendant Almy's letter "was provided [to] the New Hampshire Grand Master, as well as other states' Grand Masters."  As Mr. Almy points out in his Memorandum of Law to Support his Motion to Dismiss, Plaintiffs fail to state who provided that letter to the Grand Master of New Hampshire. ECF 18-1, p.3.  Defendant Bousquet is an Oregon resident and the "immediate past Grand Master of the Grand Lodge of Ancient Free and Accepted Masons of Oregon" <u>Id.</u>, (quoting Bousquet Affidavit, ECF 15-4, ¶¶4-6), and Mr. Almy is the Grand Master of the Grand Lodge of Ancient and Free and Accepted Masons of Oklahoma and an Oklahoma resident.  <u>Id.</u> at p. 2 (citing Declaration ¶ 7; Almy Affidavit ¶ 4.)

Plaintiffs now state that they "anticipate that with a modicum of discovery . . . they will demonstrate that the individual and collective purpose of the above-described conduct . . . was to motivate and encourage others to disseminate the claim of "irregularity" throughout the Grand Commanderies of all fifty states, including New Hampshire." Plaintiffs allege that this new evidence will "satisfy the three necessary elements for personal jurisdiction, relatedness, purposeful availment, and reasonableness." This "offer of proof," however, fails to "present facts to the Court which show why jurisdiction will be found if discovery were permitted," <u>US. v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 625-626 (1st Cir. 2001) as the additional facts alleged are conclusory and, even if allowed and proved, fail to establish grounds for this Court to exercise personal jurisdiction against Defendant Almy. Accordingly, Plaintiffs' Motion to Conduct Conditional Discovery must be denied as to Mr. Almy, and Mr. Almy's Motion to Dismiss should be granted.

**III.** <u>**Argument**</u>

    A.   <u>Standard of Review</u>

This Court has broad discretion to deny discovery, even when a plaintiff has been diligent and has made a colorable claim for personal jurisdiction. <u>Id.</u> at 625-626. The standard for reversing a district court's decision to allow jurisdictional discovery is high. <u>Id.</u> A ruling will be overturned "only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." <u>Id.</u> at 627, (quoting, <u>Crocker v. The Hilton Int'l Barbados</u>, 976 F.2d 797, 801 (1st Cir. 1992)).

    B.   <u>Plaintiffs Fail to Specify the Evidence They Intend to Find Through Jurisdictional Discovery</u>

In order for this Court to grant Plaintiffs jurisdictional discovery, Plaintiffs first have the "obligation to present facts to the court which show why jurisdiction would be found if discovery

were permitted." Id. at 626.  To accomplish this, Plaintiffs must "specify the type of evidence they think they will find."  D'Jamoos v. Atlas Aircraft Center, Inc., 2008 WL 5083798 at *1 (D.N.H. 2009).  Further, Plaintiffs must provide this Court with a "detailed description of the 'additional pertinent avenues of inquiry' that [they] hope . . . to pursue." Swiss American Bank, 273 F.3d at 626.  Plaintiffs have failed to meet this standard.  Their only attempt at meeting this standard is an overarching and broad statement that their discovery would be "perhaps limited to interrogatories and requests for production of documents" to "demonstrate that the individual and collective purpose of [Mr. Almy's alleged] conduct . . . was to motivate and encourage others to disseminate the claim of 'irregularity' throughout the Grand Commanderies of all fifty states, including New Hampshire."  ECF 23-1, p. 14.

Here, Plaintiffs fail to specify what types of documents they would request or what sorts of interrogatories they would ask.  Further, they fail to elaborate on what type of evidence they believe exists to show the alleged motivation of Mr. Almy's alleged conduct.  Their request, like the request this Court denied in Nordica USA Corp v. Old Sorenson, 475 F. Supp. 2d 128, 139 (D.N.H. 2007), amount to "little more than a fishing expedition" and must be denied.

 C. Even If Allowed and Proved, Plaintiffs Alleged Additional Facts Would Not Establish Personal Jurisdiction as to Mr. Almy

Mr. Almy has already briefed in his Memorandum of Law to Support His Motion to Dismiss, ECF 18-1, why this Court cannot establish personal jurisdiction as to him.  Plaintiffs allegation that Mr. Almy's intention "was to motivate and encourage others to disseminate the claim of 'irregularity' throughout the Grand Commanderies of all fifty states, including New Hampshire" fails to change this analysis.  Incorporating by reference the facts and arguments Mr. Almy asserted in ECF 18-1, Mr. Almy now specifically addresses what he interprets to be Plaintiffs' new argument.  It appears that Plaintiffs are arguing that if they can prove that Mr.

4

Almy's intention in allegedly sending a letter from Oklahoma to Oregon that ended up in New Hampshire "was to motivate and encourage others to disseminate the claim of 'irregularity' throughout the Grand Commanderies of all fifty states, including New Hampshire" they will have proved that Mr. Almy intended to hurt New Hampshire Plaintiffs in that Mr. Almy allegedly knew his actions would "deprive [Plaintiffs] of the ability to receive charitable funds or administer the charities." ECF 23-1, p. 14. Plaintiffs make this argument on the theory that they can establish personal jurisdiction by establishing that Mr. Almy's conduct was the cause of an actual injury in New Hampshire.  ECF 23-1, p. 13.

This conclusion is flawed, legally inaccurate, and misinterprets the holding of <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1388 (1st Cir. 1995).  <u>Sawtelle</u>, rather, is extremely analogous to the case at bar and demonstrates why Mr. Almy's alleged connections to New Hampshire, even if proven with additional discovery, would be insufficient for this Court to exercise jurisdiction over him. In <u>Sawtelle</u>, NH residents, the Sawtelles, hired a California law firm to bring a wrongful death action after their son died when an aircraft from Florida struck his aircraft over the New Hampshire/Vermont border.  <u>Id.</u> at 1386.  The California firm, which was not a party in <u>Sawtelle</u>, sent a retention agreement to the Sawtelles in New Hampshire that the Sawtelles signed and returned.  <u>Id.</u>  The California firm then transferred the case to a D.C. firm which assigned the case to Farrell.  <u>Id.</u>  Farrell was a Virginia resident and attorney not licensed to practice law in New Hampshire.  <u>Id.</u>  Farrell, in the course of representing the Sawtelles, sent them at least fifteen letters in New Hampshire and spoke to them by telephone on numerous occasions.  <u>Id.</u> Farrell recommended that Florida was the most advantageous forum for the wrongful death claim and engaged Olin (also a defendant in <u>Sawtelle</u>) as local Florida counsel.  <u>Id.</u>  Like Farrell, Olin was not licensed to practice in New Hampshire, but sent numerous letters to the Sawtelles

5

in New Hampshire and participated in several telephone conversations with them concerning his legal representation.  Id.

The Sawtelles ultimately settled their wrongful death claim, allegedly at the negligent advice of their attorneys, for a sum that they later claimed was insufficient.  Id.  In their legal malpractice action against the Florida and Virginia attorneys, the Sawtelles argued that this Court should have jurisdiction over the defendants as they "negligently directed settlement advice into New Hampshire (by telephone and mail), causing them to rely on that advice and thereby suffer economic loss in New Hampshire."  Id. at 1387.

There, the First Circuit held, "the transmission of information into New Hampshire by way of telephone or mail is unquestionably a contact for purposes of our analysis.  It would, however, be illogical to conclude that those isolated recommendations constituted the negligent conduct that caused the Florida injury and thus were in-forum acts sufficient to establish specific personal jurisdiction in New Hampshire."  Id. at 1389-90.  The First Circuit further opined, "it was the aggregate of the defendants' allegedly negligent acts and omissions which caused the Florida injury, and the out-of-forum negligence was the effective cause."  Id. at 1390.

In affirming the District of New Hampshire's holding that it did not have personal jurisdiction over the defendants in Sawtelle, the First Circuit concluded that "plaintiffs' showing of relatedness should be characterized as tenuous at best.  It hangs as it were, by a thread."  Id. at 1391.  Despite the Sawtelle defendants sending letters directly to the Sawtelles in New Hampshire, which allegedly provided negligent legal advice, causing the Sawtelle's economic loss in New Hampshire, the First Circuit remained "gravely doubtful that the defendants purposefully availed themselves of the benefits and protections of New Hampshire law."  Id. Further, the Court rejected the Sawtelle plaintiffs' argument that the "defendants' efforts to

cultivate their images as 'national' firms were deliberate, significant activities within the forum sufficient to satisfy the purposeful availment requirement." Id. at 1393.  In rejecting this "stream of commerce theory" the First Circuit relied on the United States Supreme Court holding which rejected the claim that "a commercial enterprise should be subject to personal jurisdiction wherever its conduct foreseeably causes injury, regardless of whether the defendant directed its conduct toward the forum state." Id. at 1393, citing Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 107 (1987).

Here, Plaintiffs' claims against Mr. Almy are even more tenuous than those alleged in Sawtelle.  Plaintiffs argue that Mr. Almy, in Oklahoma, sent a letter to Mr. Bosquet in Oregon, "barring members of the Grand Encampment and the Grand Commandery from attending meetings in Oklahoma."  ECF 23-1, p. 12.  They then allege that this letter "was provided," without saying by whom, to the New Hampshire Grand Master as well as other states' Grand Masters.  Id.

In seeking jurisdictional discovery, Plaintiffs claim they can prove that Mr. Almy's intention "was to motivate and encourage others to disseminate the claim of 'irregularity' throughout the Grand Commanderies of all fifty states, including New Hampshire" knowing that would hurt New Hampshire Plaintiffs as it would "deprive [Plaintiffs] of the ability to receive charitable funds or administer the charities." ECF 23-1, p. 14.  In other words, Plaintiffs allege that Mr. Almy's letter directed information into New Hampshire causing Plaintiffs to suffer an economic loss in New Hampshire.  This is the identical legal theory of jurisdiction espoused in Sawtelle, rejected by this Court, and affirmed by the First Circuit.

There, the alleged tort involved the negligent settlement of a Florida case, though the injury was clearly felt in New Hampshire and "caused" by correspondence with New Hampshire.

Here, Mr. Almy's alleged letter involved decisions and actions in Oklahoma, Oregon, and possibly Virginia (during Masonic Week) affecting upcoming meetings in Oklahoma. Specifically, regardless of the alleged economic effects in New Hampshire, the letter stated that it "barred members of the Grand Encampment and the Grand Commandery from attending meetings in *Oklahoma*."  (Emphasis added.)  Even if Plaintiffs could prove with jurisdictional discovery that Mr. Almy intended to cause Plaintiffs economic loss in New Hampshire, such a connection, like the letters recommending settlement sent directly by the out-of-state attorneys to the Sawtelles, are "isolated and insufficient" to establish personal jurisdiction in New Hampshire where, as in here, the "aggregate of the defendants' allegedly negligent acts . . . caused [Plaintiffs' alleged] injury [(which in the case of Mr. Almy would be classified as an Oklahoma injury)], and the out-of-forum [alleged] negligence was the effective cause." Sawtelle, 70 F.3d at 1390.

Likewise, in Mr. Almy's case, Plaintiffs allegations stem from actions committed by branches of a national fraternal organization allegedly committed to impact local New Hampshire branches and members.  This theory rests on the same "stream of commerce theory" rejected in Sawtelle and already addressed in Mr. Almy's Memorandum of Law to Support his Motion to Dismiss.  ECF 18-1.  Even if Plaintiffs were to be afforded jurisdictional discovery, they will be unable to provide this Court with sufficient facts with which it could establish personal jurisdiction over Mr. Almy.

**IV.    Conclusion**

Accordingly, Plaintiffs request for Jurisdictional Discovery must be Denied as to Mr. Almy, and Mr. Almy's Motion to Dismiss should be Granted.

Respectfully submitted,
GLENN E. ALMY

By his attorneys,
HAGE HODES, P.A.

Date:  December 16, 2011          /s/ Jamie N. Hage
                                  Jamie N. Hage (NHB #1054)
                                  Kathleen A. Davidson (NHB #19535)
                                  Hage Hodes, Professional Association
                                  1855 Elm Street
                                  Manchester, New Hampshire 03104
                                  Tel: (603) 668-2222
                                  jhage@hagehodes.com
                                  kdavidson@hagehodes.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December, 2011, a copy of the foregoing pleading was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Jamie N. Hage
Jamie N. Hage

9