```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

Grand Encampment of Knights
Templar of the United States
of America and Grand Commandery
of Knights Templar of New Hampshire


  v.           Civil No. 11-cv-463-JD
                Opinion No. 2012 DNH 016

Conference of Grand Masters
of Masons in North America, Inc., et al.


           O R D E R

  The Grand Encampment of Knights Templar of the United States of America ("Grand Encampment") and the Grand Commandery of Knights Templar of New Hampshire brought suit in state court against the Conference of Grand Masters of Masons in North America, Inc. ("Conference") and seven individuals associated with the Conference.  The defendants removed the case to this court.  Most of the defendants then filed motions to dismiss for lack of personal jurisdiction.[1]  The plaintiffs objected to the motions.[2]

---

  [1]After the case was removed, the plaintiffs' motion to amend to add Donald H. Yankey as a defendant was granted.

  [2]The plaintiffs' motion for jurisdictional discovery was denied.

Standard of Review

"A district court, faced with a motion to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), may choose from among several methods for determining whether the plaintiff has met its burden of proving the court's personal jurisdiction over the defendant."[3]  N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 22 (1st Cir. 2005) (internal quotation marks omitted).  The most common method is to determine whether the plaintiff has proffered sufficient evidence to make a prima facie case of personal jurisdiction.  Id.  "This inquiry asks whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 54 (1st Cir. 2010) (internal quotation marks omitted).  Because the parties submitted evidence in support of and in opposition to the motions to dismiss, the court will proceed under the prima facie method.

---

[3] Although Defendant Donald M. Andress also cites Federal Rule of Civil Procedure 12(b)(3), which addresses improper venue, Andress makes no argument in support of that part of his motion. Therefore, venue is not considered here.

Background

The Knights Templar is a Masonic fraternal organization. The Grand Encampment is the national level of the organization, with an address in Texas. The Knights Templar operates nationally and on state and local levels. The state organizations are Grand Commanderies; local branches are Commanderies; and individual members are known as Sir Knights.

The Grand Encampment raises money for its charities, the Knights Templar Eye Foundation, the Knights Templar Educational Foundation, and the Holy Pilgrimage Fund, which depend on money raised by Sir Knights through the state Commanderies. Some current and former officers of the Grand Encampment are New Hampshire residents, including Sir Knight Thomas X. Tsirimokos, Past Grand Commander of the Grand Commandery and current Chairman of the Grand Encampment Committee on Templar Jurisprudence.

The Conference and the individual defendants are part of a Masonic organization known as the Grand Masters of Masons. The Conference is located in Missouri. The individual defendants are present and past Grand Masters of Grand Lodges of Free and Accepted Masons in Washington, Oregon, Oklahoma, Alabama, and Illinois and are also present or past members of a Knights Templar organization.

The dispute between the Grand Encampment and the Conference arose as the result of activities on January 22, 2011, in Marseilles, France, during a ceremony held by a French Masonic organization, the Great Priory of Occitania, which was attended by members of the Grand Encampment, the National Grand Lodge of France, the American Canadian Grand Lodge, the United Grand Lodge of England, and the Grand Lodges of Illinois, Indiana, New York, Ohio, Tennessee, and Texas.  The Great Priory of Occitania granted a patent to the Grand Encampment to establish the Eleventh Province of the Scottish Rectified Rite ("Rectified Rite").  The Grand Encampment's officers serve as the officers of the Rectified Rite.

In early February of 2011, a gathering known as Masonic Week was held in Alexandria, Virginia.  The gathering was attended by members of Masonic organizations, including six Sir Knights from New Hampshire.  William R. Miller, a Past Grand Master of the Washington Grand Lodge, prepared a fact sheet which declared that the Charter issued to the Grand Encampment was irregular, meaning improperly or unlawfully established, and accused the Grand Encampment of planning to establish irregular lodges.  An attendee at Masonic Week told the New Hampshire Sir Knights about Miller's fact sheet.  After Masonic Week, Miller discussed his concerns with other Grand Masters, including G. Santy Lascano,

4

Grand Master of the Washington Lodge, and Ed Bousquet, Grand Master of the Oregon Grand Lodge.

The Conference's Commission on Information for Recognition published a report during the annual meeting of the Conference of Grand Masters, held in Denver, Colorado, at the end of February, declaring that the Grand Priory of Occitania was an irregular organization.  The Commission's report also expressed concern about Grand Lodge members associating with irregular organizations.  The report was published to all of the Grand Lodges, including New Hampshire's Grand Lodge.

In April, Lascano and Bousquet issued edicts that declared the Grand Encampment and the Rectified Rite to be irregular and directing their members not to communicate with its members.  After sending the edict, Bousquet talked by telephone with Tsirimokos, who was in New Hampshire.  Bousquet informed Tsirimokos that he was barred from attending the Grand Conclave of Oregon because Tsirimokos held an office within the Grand Encampment.

The Grand Master of the Oklahoma Grand Lodge, Glenn E. Almy, sent a letter to Bousquet in which he stated that the Grand Encampment was irregular and that its members would be barred from an upcoming meeting in Oklahoma.  Almy's letter then was sent to other Grand Lodges, including the lodge in New Hampshire.

David P. Owen, the Grand Secretary of the Grand Lodge of Washington sent an email to the Grand Secretaries in all states, declaring the Rectified Rite to be irregular and suggesting similar action by other Grand Lodges.  Ronald G. Andress, Grand Master of the Alabama Grand Lodge, and Richard L. Swaney, Grand Master of the Illinois Grand Lodge, sent letters declaring the Rectified Right to be irregular and precluding contact by their members with members of the irregular organization.

   The Grand Encampment alleges that the charges of irregularity are false and defamatory and have interfered with the Grand Encampment's ability to raise money for its charities. In this action, the plaintiffs bring claims of intentional interference with contractual relations, intentional misrepresentation, negligent misrepresentation, and civil conspiracy.


                          Discussion

   The Conference and the individual defendants assert, supported by affidavits and other evidence, that the court lacks personal jurisdiction as to each of them.  In response, the plaintiffs argue in a consolidated memorandum that sufficient evidence supports specific personal jurisdiction to avoid

dismissal. The plaintiffs submit an affidavit and other evidence in support of their objection.

Personal jurisdiction requires the plaintiffs to show that the defendants had sufficient minimum contacts with the forum state to satisfy due process. Adams v. Adams, 601 F.3d 1, 5 (1st Cir. 2010). The necessary showing for specific jurisdiction is comprised of three inquiries: "First, . . . whether the asserted causes of action arise from or relate to the defendant's contacts with the forum, . . . . Second, . . . whether the defendant purposefully availed itself of the protections of the forum's laws by means of those contacts, such that the defendant could reasonably foresee being haled into the forum's courts . . . . Third, . . . whether an exercise of jurisdiction is consistent with the principles of justice and fair play." Carreras v. PMG Collins, LLC, 660 F.3d 549, 554 (1st Cir. 2011) (internal quotation marks and citations omitted). Each part of specific jurisdiction is addressed in turn.

A. Relatedness

"To demonstrate 'relatedness,' [the plaintiffs] must show a demonstrable nexus between [their] claims and [each defendant's] forum-based activities, such that the litigation itself is founded directly on those activities." Adelson v. Hananel, 652

F.3d 75, 81 (1st Cir. 2011) (internal quotation marks omitted). Activity, for jurisdictional purposes, does not require the defendant's physical presence in the forum state and, instead, may be satisfied when an actual injury is caused in the forum state. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009). That is, in the context of an intentional interference with contractual relations claim, when a defendant's actions outside the forum state interfere with a contract that is to be performed in the forum state, the injury caused by the interference is felt in the forum state. Id. at 10.

The plaintiffs acknowledge the defendants' lack of physical contact with New Hampshire. They argue instead, for purposes of their claim for interference with contractual relations, that the defendants' activities caused an injury in New Hampshire. To prove a claim of tortious interference with contractual relations, the plaintiffs must show that they had a contractual relationship with a third party, that the defendants knew of the contractual relationship, and that the defendants wrongfully induced the third party to breach the contract. Nat'l Employment Serv. Corp. v. Olsten Staffing Serv., Inc., 145 N.H. 158, 162 (2000); Barrows v. Boles, 141 N.H. 382, 392-93 (1996).

The plaintiffs rely on their allegations that the defendants falsely accused the Grand Encampment of being irregular and

impaired the Grand Commanderies' ability to collect dues from Sir Knights which "rendered it impossible for the Grand Encampment to oversee funds collected for the charitable purposes . . . ."  Pl. Mem. doc. no. 22 at 11.  The plaintiffs' cite their allegations that through their false allegations, the defendants "intentionally interfered with the Grand Encampment's and the Grand Commandery's contractual relationships with their Sir Knights.  Specifically, the false accusations impaired each organization's likelihood and ability to collect dues from its Sir Knights, and rendered it impossible for the Grand Encampment to oversee funds collected for the charitable purposes described [in the complaint]."  Id.  The plaintiffs contend that the following occurrences show relatedness with New Hampshire: someone sent Almy's letter to the Grand Master of the New Hampshire Grand Commandery, Owen sent his email to the secretary of the New Hampshire Grand Lodge, Bousquet told Tsirimokos who was in New Hampshire that Tsirimokos was barred from attending a meeting in Oregon, the Conference's declaration was sent to the New Hampshire Grand Lodge, and Miller distributed his fact sheet at the Virginia meeting that was attended by New Hampshire Sir Knights.

   The plaintiffs' allegations show no contact with New Hampshire by Lascano, Andress, and Swaney.  The plaintiffs allege

that someone other than Almy sent his letter to New Hampshire. Therefore, the plaintiffs' provide no basis for personal jurisdiction as to those defendants.

The plaintiffs have not shown or even alleged that Owen's email, Miller's fact sheet, Bousquet's telephone conversations, or the Conference's report caused any New Hampshire Sir Knights not to pay dues.  Even if the plaintiffs could show that a contractual relationship with the Grand Encampment and the New Hampshire Grand Commandery required New Hampshire Sir Knights to pay dues to either or both of them and that because of the defendants' actions the New Hampshire Sir Knights did not pay the required dues, the plaintiffs allege that the effect of not paying dues was felt by either the Grand Encampment, which is not in New Hampshire, or its charities, which also are not in New Hampshire.  The plaintiffs' reliance on Astro-Med, 591 F.3d 1, and Medicus Radiology, LLC v. Nortec Med. Staffing, Inc., 2011 WL 9373 (D.N.H. Jan. 3, 2011), is misplaced as the circumstances in those cases are inapposite to the circumstances here.  Therefore, the plaintiffs have not shown that any of their claims are sufficiently related to the defendants' activities in New Hampshire to support personal jurisdiction.

B.  <u>Purposeful Availment</u>

Even if the plaintiffs were able to satisfy the relatedness prong, they did not provide a prima facie case for purposeful availment.  The plaintiffs again focus on their intentional interference with contractual relations claim.  They argue that the defendants' actions of declaring the Grand Encampment and the Rectified Rite irregular satisfy the purposeful availment requirement through the "effects test," relying on the analysis in <u>Astro-Med</u> and arguing that the same conduct by the defendants' in this case shows purposeful availment.

In <u>Astro-Med</u>, the plaintiff was a Rhode Island corporation with its principle place of business in Rhode Island and sued the defendant in Rhode Island for tortious interference with its contractual relationship with a sales representative.  591 F.3d at 6-7.  The defendant, a California corporation and a competitor of the plaintiff, hired one the plaintiff's sales representatives in Florida to replace its own Florida representative.  <u>Id.</u> at 7. The defendant asserted a lack of personal jurisdiction because it was located in California and the hiring, which was the subject of the claim, occurred in Florida.  <u>Id.</u> at 7-8.

The court noted that to satisfy purposeful availment the defendant's contacts with Rhode Island "had to represent a purposeful availment of the privilege of conducting activities in

11

the forum state . . . ." Id. at 10 (internal quotation marks omitted). The court concluded the requirement was met because the defendant knew that the sales representative was bound by an employee agreement with the plaintiff and that the agreement provided that the laws of Rhode Island governed the agreement and that the sales representative consented to suit in Rhode Island. Id.

In this case, none of the cited connections between the individual defendants or the Conference even suggests that any of them invoked the benefits or protections of New Hampshire law. The plaintiffs do not allege any provisions of a contract or an agreement between them and Sir Knights in New Hampshire that would support purposeful availment. Therefore, the plaintiffs failed to make even a prima facie case to support purposeful availment.

Because the plaintiffs have not sustained their burden of providing a prima facie case as to the first two requirements for specific personal jurisdiction, the court need not consider the reasonableness requirement.

## Conclusion

For the foregoing reasons, the defendants' motions to dismiss (documents nos. 13, 15, 16, and 18) are granted. Because

the court lacks personal jurisdiction over the Conference of Grand Masters of Masons in North America, Inc., G. Santy Lascano, David P. Owen, Ed Bousquet, Glenn E. Almy, Ronald G. Andress, Richard L. Swaney, and William Miller, all claims against those defendants are dismissed.

As is noted above, the plaintiffs added Donald H. Yankey as a defendant in the amended complaint filed on October 25, 2011. Therefore, judgment cannot be entered at this time.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

January 18, 2012

cc: Jennifer Turco Beaudet, Esquire
    Mark A. Darling, Esquire
    Kathleen A. Davidson, Esquire
    Lawrence B. Gormley, Esquire
    Jamie N. Hage, Esquire
    Thomas J. Pappas, Esquire
    Michael D. Ramsdell, Esquire