UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Grand Encampment of Knights Templar of the United States of America, c/o Lawrence E.Tucker, Grand Commandery of Knights Templar of New Hampshire c/o S.K. Dennis A. Sheridan<br><br>PLAINTIFFS<br><br>v.<br><br>Conference of Grand Masters of Masons in North America, Inc., G. Santy Lascano David P. Owen, Ed Bousquet, Glenn E. Almy, Ronald G. Andress, Richard L. Swaney, William R. Miller<br><br>DEFENDANTS | Civil Action No. 1:11-cv-00463 |

**OBJECTION OF DEFENDANTS, WILLIAM R. MILLER,
DAVID P. OWEN AND ED BOUSQUET TO PLAINTIFFS'
MOTION FOR PARTIAL RECONSIDERATION OF ORDER
<u>GRANTING MOTIONS TO DISMISS</u>**

The defendants, David P. Owen, William R. Miller, and Ed Bousquet, by and through their counsel, Litchfield Cavo LLP, objection to the Plaintiffs' Motion for Partial Reconsideration of Order Granting Motions to Dismiss.

**I. <u>Introduction</u>**

This case arises out of a dispute among Masonic fraternal organizations over the "regularity" – i.e., compliance with Masonic law – of a newly established Masonic body known as the Grand Priory of the Reformed and Rectified Rite of the United States of America. Among the individual defendants against whom claims have been asserted by the plaintiffs (the Grand

1

Encampment of Knights Templar of the United States of America and the Grand Commandery of Knights Templar of New Hampshire) are two current and former officers of the Grand Lodge of Free and Accepted Masons of Washington (hereinafter "Washington Grand Lodge") – William R. Miller and David P. Owen[1] – and one former officer of the Grand Lodge of Ancient Free and Accepted Masons of Oregon (hereinafter "Oregon Grand Lodge") – Ed Bousquet.

In October, 2011, all of the defendants filed motions to dismiss the plaintiffs' Writ of Summons, citing lack of personal jurisdiction. On December 2, the plaintiffs filed an objection to the motions to dismiss, together with a request to conduct jurisdictional discovery. After denying the request for discovery, the Court issued an Order on January 18, 2012, allowing the defendants' motions to dismiss.[2] On February 2, the plaintiffs filed a Motion for Partial Reconsideration of the Order, seeking to revive the claims against Miller, Owen, and Bousquet, together with the claims against the Conference of Grand Masters of Masons in North America, Inc. As discussed below, the plaintiffs have failed to demonstrate a valid basis for reconsideration of the Order, and again, have failed to meet their burden to demonstrate that this Court personal jurisdiction over these defendants when it does not.

## II. Factual Background

The factual background pertinent to the motions before the Court is fully set forth in the Memoranda in Support of the Defendants' Motions to Dismiss, together with the affidavits of David P. Owen, William R. Miller and Ed Bousquet provided in support of those motions. The

---

[1] A third former officer of the Washington Grand Lodge, G. Santy Lascano, was named as a defendant in the suit, but the plaintiffs have not sought reconsideration of the Order dismissing the claims against Mr. Lascano.

[2] One defendant, Donald H. Yankey, was added to the case later than the others, via an amendment to the Complaint. As such, he did not join in the motions of the other defendants, and the Order does not address the claims against him. Due to the pendency of the claim against Mr. Yankey, final judgment has not yet entered in favor of the other defendants.

defendants respectfully refer the Court to those materials, and incorporate them by reference herein.

### III. Argument

A. **THE PLAINTIFFS MAY NOT RAISE ARGUMENTS WHICH THEY ELECTED NOT TO INCLUDE IN THEIR ORIGINAL OBJECTION.**

As a general rule, a motion for reconsideration is appropriate only where the moving party demonstrates "that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law."[3] *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006). Other potential grounds include a manifest error of fact, manifest injustice, or an intervening change in the law. *Northwest Bypass Group v. U.S. Army Corps of Engineers*, 552 F.Supp.2d 137, 145 n.5 (D.N.H. 2008); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" *Palmer, supra* at 30, quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (2d ed. 1995).

Here, the plaintiffs do not base their motion upon any alleged factual errors, newly discovered evidence, manifest injustice, or change in the applicable law. Rather, their motion is premised upon the assertion that the Court committed a "manifest error of law" in granting the defendants' motion to dismiss. They claim that the Court erred in focusing primarily upon deficiencies in the plaintiffs' claim alleging intentional interference with contractual relations, without specifically addressing their other claims for misrepresentation (intentional and

---

[3] Most of the case law addressing these standards concerns post-judgment motions filed pursuant to Fed. R. Civ. P. 59 and 60. Because final judgment has not yet entered here, the plaintiffs' motion is governed by Local Rule 7.2(e), which provides that a "motion to reconsider an interlocutory order of the court … shall demonstrate that the order was based on a manifest error of fact or law." However, the standard under Local Rule 7.2(e) is not substantively different than that which governs under Fed. R. Civ. P. 59 and 60. *Northwest Bypass Group v. U.S. Army Corps of Engineers*, 552 F.Supp.2d 137, 145 (D.N.H. 2008).

negligent) and civil conspiracy.  The plaintiffs imply that the Court somehow overlooked these other claims, and in doing so committed a "manifest error of law" which warrants reconsideration.

    The Court committed no such error.  The Order focused upon the intentional interference with contractual relations claim because that was the *only* claim which the plaintiffs elected to address in their objection.  Contrary to the disingenuous assertion that they "focused much of their argument" on that claim, a review of the plaintiffs' consolidated objection to the defendants motion to dismiss reveals that they focused *all* of their argument on that claim, and elected, whether strategically or otherwise, not to make any other arguments in their Opposition.  The other claims are not mentioned anywhere in the memorandum.

    The plaintiffs apparently made a strategic choice in preparing their objection to the defendants' motions to dismiss, believing that their jurisdictional arguments were strongest in relation to the claim of intentional interference with contractual relations, and thus they chose to base their objection entirely upon that one claim.  For the reasons set forth in the Order, however, their arguments in relation to that claim were fatally flawed.  Having chosen to place all their proverbial eggs in one basket, the plaintiffs cannot now attempt to blame the Court for failing to address additional arguments which they themselves chose not to raise.

    "Generally, a party is not entitled to present new arguments on a motion for reconsideration."  *Global NAPs, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 25 (1st Cir. 2007).  Such motions "are aimed at *re*consideration, not initial consideration," and therefore should not be used "to raise arguments which could, and should, have been made" previously.  *FDIC v. World University, Inc.*, 978 F.2d 10, 16 (1st Cir. 1992), quoting *Harley-Davidson Motor Co., Inc. v. Bank of New England*, 897 F.2d 611, 616 (1st Cir. 1990).  *See also Jorge Rivera*

*Surillo & Co., Inc. v. Falconer Glass Industries, Inc.*, 37 F.3d 25, 29 (1st Cir. 1994). Whether the failure to raise arguments sooner is the result of a "strategic choice" or merely "second thoughts about [their] best arguments, parties are bound by the choices they make." *Global NAPs, supra* at 26. Where, as here, the "mistake" of failing to address the other claims was committed by the plaintiffs themselves, and not by the Court, the motion for reconsideration should be denied.

**B. THE PLAINTIFFS MAY NOT REITERATE ARGUMENTS FROM THEIR ORIGINAL OBJECTION.**

Moreover, although the plaintiffs' motion shifts its focus to the misrepresentation claims (and continues to ignore the civil conspiracy claim), the substantive arguments raised in the motion are largely identical to those raised in their initial objection. Indeed, the majority of the argument set forth in the motion for reconsideration consists of large blocks of text copied verbatim from their previous objection to the motions to dismiss. A motion for reconsideration "is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Palmer, supra* at 30, citing *In re Sun Pipe Line Co.*, 831 F.2d 22, 24-25 (1st Cir. 1987). In the words of one New Hampshire District Court judge:

> Motions for reconsideration are poorly named. The title suggests that whenever a litigant is disappointed, he is free to ask the court to mull it over again, this time favorably to his position, presumably on the theory that by mere repetition – perhaps raising the level of rhetoric – the court will see it his way. This view of a motion to reconsider is erroneous. Right or wrong, the trial court has made its decision; unless it has committed an error of law so obvious that it must be corrected or the movant has discovered a new fact that compels a different result, the parties must accept the court's ruling, adjust their arguments accordingly, and seek vindication on appeal.

*Northwest Bypass Group, supra* at 144. Thus, to the extent that it merely reiterates arguments raised in its initial objection, the plaintiffs' motion should be denied.

**C. THE ONLY ARGUABLY "NEW" ARGUMENT IN THE PLAINTIFFS' MOTION IS WITHOUT SUBSTANTIVE MERIT.**

The only arguably "new" argument raised in the plaintiffs' motion is the brief assertion that the defendants' contacts with New Hampshire satisfy the "relatedness" prong of the test for specific personal jurisdiction, because the misrepresentation claims purportedly "directly arise from and relate to Defendants' activities in New Hampshire." (Plaintiff's Memorandum, p. 5). Even if they were not precluded from belatedly making this assertion, it is factually and legally insupportable.

The plaintiffs have not established that Miller ever gave his "fact sheet" to anyone *from* New Hampshire, much less that he sent it to someone *in* New Hampshire. Owen's email was indeed forwarded to one recipient in New Hampshire. However, as discussed in the memorandum in support of the defendants' motion to dismiss, that email contained no "misrepresentation" at all. Rather, it accurately set forth the action taken by the Grand Lodge *in Washington State*. Moreover, there is no evidence that anyone in New Hampshire even *read* the email. Bousquet had a series of telephone conversations with Thomas Tsirimokos (the Chairman of the Grand Encampment Committee on Templar Jurisprudence, who resides in New Hampshire) regarding the controversy over the Great Priory of Occitania and the Grand Priory of the Reformed and Rectified Rite of the United States of America. (*See* Declaration of Ed Bousquet, ¶¶ 16-25; Affidavit of Thomas X. Tsirimokos, ¶ 9). During those conversations – some of which were initiated by Mr. Tsirimokos – Mr. Bousquet allegedly informed Mr. Tsirimokos that, as a result of the edict issued *in Oregon*, he could not attend the meeting *in Oregon* of the Grand Conclave of Oregon. (Tsirimokos Affidavit, ¶ 9).

As more fully discussed in the defendants' original motions to dismiss, these limited and ephemeral (and, in Mr. Miller's case, utterly nonexistent) contacts with New Hampshire are, at

best, merely incidental to the defendants' non-forum activities, and fail to satisfy the relatedness prong. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994); *Negron-Torres v. Verizon Communications, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007); *Sawtelle v. Farrell*, 70 F.3d 1381, 1389-91 (1st Cir. 1995).

Moreover, as the Court correctly noted in its Order:

> The plaintiffs have not shown or even alleged that Owen's email, Miller's fact sheet, Bousquet's telephone conversations, or the Conference's report caused any New Hampshire Sir Knights not to pay dues. Even if the plaintiffs could show that a contractual relationship with the Grand Encampment and the New Hampshire Grand Commandery required New Hampshire Sir Knights to pay dues to either or both of them and that because of the defendants' actions the New Hampshire Sir Knights did not pay the required dues, the plaintiffs allege that the effect of not paying dues was felt by either the Grand Encampment, which is not in New Hampshire, or its charities, which also are not in New Hampshire.

(Order, p. 10). The Court's reasoning on this point is equally applicable to *all* of the plaintiffs' claims, not merely to its claim for intentional interference with contractual relations. Thus, its conclusion – that "the plaintiffs have not shown that any of their claims are sufficiently related to the defendants' activities in New Hampshire to support personal jurisdiction" (*id.*) – remains legally valid, notwithstanding any assertions to the contrary in the plaintiffs' motion.

## IV. Conclusion

For the foregoing reasons, the defendants, David P. Owen, William R. Miller and Ed Bousquet, respectfully request that the Plaintiffs' Motion for Partial Reconsideration of Order Granting Motions to Dismiss be DENIED.

        Respectfully Submitted,
The Defendants,
G. Santy Lascano, David P. Owen,
William R. Miller and Ed Bousquet,
By their attorney,


/s/ Mark A. Darling
Mark A. Darling, Esquire
Litchfield Cavo LLP
Six Kimball Lane, Suite 200
Lynnfield, MA 01940
(781) 309-1500
N.H. Bar #: 4803

## CERTIFICATE OF SERVICE

      I hereby certify that on February 14, 2012, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electric Filing and paper copies will be sent to those indicated as non-registered participants.


        /s/ Mark A. Darling
Mark A. Darling