UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Grand Encampment of Knights
Templar of the United States
of America, et al.

     v.                      Civil No. 11-cv-463-JD
                                  Opinion No. 2011 DNH 051

Conference of Grand Masters of
Masons in North America, Inc., et al.

O R D E R

The Grand Encampment of Knights Templar of the United States
of America ("Grand Encampment") and the Grand Commandery of
Knights Templar of New Hampshire brought suit against the
Conference of Grand Masters of Masons in North America, Inc.
("Conference") and seven individuals associated with the
Conference, alleging intentional interference with contractual
relations, intentional and negligent misrepresentation, and a
civil conspiracy.  The defendants then filed motions to dismiss
for lack of personal jurisdiction, which were granted.[1]  The
plaintiffs move for reconsideration.

---

[1] The plaintiffs' motion to amend to add Donald H. Yankey as
a defendant was granted, but the plaintiffs failed to complete
service within the time allowed.  Therefore, Yankey is not a
defendant in this case.

<u>Standard of Review</u>

A motion for reconsideration is appropriate only in limited circumstances.  <u>United States v. Allen</u>, 573 F.3d 42, 53 (1st Cir. 2009).  Reconsideration may be granted "where the movant shows a manifest error of law or newly discovered evidence, or where the district court has misunderstood a party or made an error of apprehension."  <u>Villanueva v. United States</u>, 662 F.3d 124, 128 (1st Cir. 2011).  Motions for reconsideration cannot be used to address arguments the plaintiff already made or to raise new arguments that could have been raised before the court's initial ruling.  <u>Feliciano-Hernandez v. Pereira-Castillo</u>, 663 F.3d 527, 537 (1st Cir. 2011).

<u>Background</u>[2]

The Knights Templar is a Masonic fraternal organization. The Grand Encampment is the national level of the organization, with an address in Texas.  The Knights Templar operates nationally and on state and local levels.  The state organizations are Grand Commanderies; local branches are Commanderies; and individual members are known as Sir Knights.

---

[2]The background information is taken from the court's order granting the motions to dismiss.

The Grand Encampment raises money for its charities, the
Knights Templar Eye Foundation, the Knights Templar Educational
Foundation, and the Holy Pilgrimage Fund, which depend on money
raised by Sir Knights through the state Commanderies.  Some
current and former officers of the Grand Encampment are New
Hampshire residents, including Sir Knight Thomas X. Tsirimokos,
Past Grand Commander of the Grand Commandery and current Chairman
of the Grand Encampment Committee on Templar Jurisprudence.

The Conference and the individual defendants are part of a
Masonic organization known as the Grand Masters of Masons.  The
Conference is located in Missouri.  The individual defendants
addressed in the motion for reconsideration are William R.
Miller, a Past Grand Master of the Washington Grand Lodge; David
P. Owen, the Grand Secretary of the Washington Grand Lodge, and
Ed Bousquet, the Grand Master of the Oregon Grand Lodge.

The dispute between the Grand Encampment and the Conference
arose as the result of activities on January 22, 2011, in
Marseilles, France, during a ceremony held by a French Masonic
organization, the Great Priory of Occitania, which was attended
by members of the Grand Encampment, the National Grand Lodge of
France, the American Canadian Grand Lodge, the United Grand Lodge
of England, and the Grand Lodges of Illinois, Indiana, New York,
Ohio, Tennessee, and Texas.  The Great Priory of Occitania

3

granted a patent to the Grand Encampment to establish the Eleventh Province of the Scottish Rectified Rite ("Rectified Rite"). The Grand Encampment's officers serve as the officers of the Rectified Rite.

In early February of 2011, a gathering known as Masonic Week was held in Alexandria, Virginia. The gathering was attended by members of Masonic organizations, including six Sir Knights from New Hampshire. Miller prepared a fact sheet which declared that the Charter issued to the Grand Encampment was irregular, meaning improperly or unlawfully established, and accused the Grand Encampment of planning to establish irregular lodges. An attendee at Masonic Week told the New Hampshire Sir Knights about Miller's fact sheet. After Masonic Week, Miller discussed his concerns with other Grand Masters, including G. Santy Lascano, Grand Master of the Washington Lodge, and Bousquet, Grand Master of the Oregon Grand Lodge.

The Conference's Commission on Information for Recognition published a report during the annual meeting of the Conference of Grand Masters, held in Denver, Colorado, at the end of February, declaring that the Grand Priory of Occitania was an irregular organization. The Commission's report also expressed concern about Grand Lodge members associating with irregular

organizations.  The report was published to all of the Grand
Lodges, including New Hampshire's Grand Lodge.

        In April, Bousquet issued an edict that declared the Grand
Encampment and the Rectified Rite to be irregular and directing
the members of the Oregon Grand Lodge not to communicate with
members of the Grand Encampment and the Rectified Rite.  After
sending the edict, Bousquet talked by telephone with Tsirimokos,
who was in New Hampshire.  Bousquet informed Tsirimokos that he
was barred from attending the Grand Conclave of Oregon because
Tsirimokos held an office within the Grand Encampment.  Owen, the
Grand Secretary of the Grand Lodge of Washington, sent an email
to the Grand Secretaries in all states, declaring the Rectified
Rite to be irregular and suggesting similar action by other Grand
Lodges.

        The Grand Encampment alleges that the charges of
irregularity are false and defamatory and have interfered with
the Grand Encampment's ability to raise money for its charities.
In this action, the plaintiffs bring claims of intentional
interference with contractual relations, intentional
misrepresentation, negligent misrepresentation, and civil
conspiracy.

<u>Discussion</u>

The plaintiffs ask for reconsideration of the order dismissing the claims for lack of personal jurisdiction for the Conference, David P. Owen, Ed Bousquet, and William R. Miller. In support, they assert that the court committed a manifest error of law in granting the defendants' motions to dismiss as to those defendants.  Specifically, the plaintiffs argue that the court erred in considering specific personal jurisdiction only in regard to the plaintiffs' claim for intentional interference with contractual relations without addressing the other claims.  The defendants object, contending that the plaintiffs cannot raise a new theory to support personal jurisdiction and that they still have not shown a prima facie case.

A.  <u>New Theory</u>

The plaintiffs contend that the court should have analyzed specific personal jurisdiction in the context of their claims for misrepresentation.  While admitting that their objection to the motions to dismiss "focused" on their intentional interference claim, the plaintiffs assert that the court, sua sponte, should have considered the misrepresentation claims.[3]  Defendants

---

[3]The plaintiffs do not raise their civil conspiracy claim for purposes of the motion to reconsider.

Miller, Owen, and Bousquet contend that the plaintiffs' motion
must be denied because they are advancing a new theory to show
personal jurisdiction that they could have, but did not, raise in
their objection to the motions to dismiss.

The defendants are correct that the plaintiffs could have
but did not address their misrepresentation claims for the
purpose of showing a prima facie case for personal jurisdiction
in their objection.  On page 11 of their objection, the
plaintiffs stated: "Plaintiffs have asserted a claim of
intentional interference with contractual relationships."  The
plaintiffs then quoted their allegations for that claim from
their complaint, provided the elements of the claim, and made
arguments for each element of personal jurisdiction based on
other cases that addressed intentional interference with
contractual relationships.  The plaintiffs did not mention any of
their other claims to support their prima facie case of personal
jurisdiction.[4]

The plaintiffs bore the burden of establishing a prima facie
case for personal jurisdiction in response to the defendants'
motions to dismiss.  See <u>Adelson v. Hananel</u>, 510 F.3d 43, 48 (1st

---

[4]In denying the plaintiffs' motion for jurisdictional
discovery, the court noted that the plaintiffs had failed to
address their particular causes of action to show a colorable
case for specific personal jurisdiction.

Cir. 2007); <u>Negron-Torres v. Verizon Commc'ns, Inc.</u>, 478 F.3d 19, 24 (1st Cir. 2007).  Their effort to satisfy that requirement was based on specific personal jurisdiction with respect to their claim of intentional interference with contractual relationships. The court addressed that theory.  Therefore, it was not a manifest error of law for the court not to raise and analyze other theories that were not advanced by the plaintiffs.[5]

B.  <u>Misrepresentation Claims</u>

The plaintiffs argue that they can show a prima facie case for specific personal jurisdiction as to their misrepresentation claims.  In their motion, however, the plaintiffs address only intentional misrepresentation.  The defendants contend that even if the plaintiffs' new argument for specific personal jurisdiction were considered, they have not shown a prima facie case based on their misrepresentation claims.[6]  Although the new

_____

[5]Because the plaintiffs are represented by counsel, they are not entitled to any special consideration that might be afforded pro se parties.  The court cannot be expected either to divine or provide legal theories on behalf of any party represented by counsel.

[6]Miller, Owen, and Bousquet also contend that the plaintiffs' arguments in support of personal jurisdiction based on their misrepresentation claims are the same as the prior arguments based on their intentional interference claims and are not an appropriate basis for reconsideration.  Although the plaintiffs rely on the same factual grounds, the theory is now

theory is not properly before the court, if it were considered, it would not succeed.

As set forth in the prior order, personal jurisdiction requires the plaintiffs to show that the defendants had sufficient minimum contacts with the forum state to satisfy due process. Adams v. Adams, 601 F.3d 1, 5 (1st Cir. 2010). The necessary showing for specific jurisdiction is comprised of three inquiries: "First, . . . whether the asserted causes of action arise from or relate to the defendant's contacts with the forum, . . . . Second, . . .  whether the defendant purposefully availed itself of the protections of the forum's laws by means of those contacts, such that the defendant could reasonably foresee being haled into the forum's courts . . . .  Third, . . . whether an exercise of jurisdiction is consistent with the principles of justice and fair play." Carreras v. PMG Collins, LLC, 660 F.3d 549, 554 (1st Cir. 2011) (internal quotation marks and citations omitted).  Only relatedness and purposeful availment need be considered here.

---

focused on the misrepresentation claims.

1.  Relatedness

"To demonstrate 'relatedness,' [the plaintiffs] must show a demonstrable nexus between [their] claims and [each defendant's] forum-based activities, such that the litigation itself is founded directly on those activities." Adelson, 652 F.3d at 81 (internal quotation marks omitted).  Activity, for jurisdictional purposes, does not require the defendant's physical presence in the forum state and, instead, may be satisfied when an actual injury is caused in the forum state.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009).  The defendant's contacts with the forum state "must form an important, or at least material, element of proof in the plaintiff's case." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 137 (1st Cir. 2006) (internal quotation marks omitted).  "The tort of intentional misrepresentation, or fraud, must be proved by showing that the representation was made with knowledge of its falsity or with conscious indifference to its truth and with the intention of causing another person to rely on the representation."  Tessier v. Rockefeller, 162 N.H. 324, 33 A.3d 1118, 1124 (2011).

Relying on Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972), the plaintiffs assert that Miller, Owen, Bousquet, and the Conference sent misrepresentations into New

Hampshire, which support the relatedness element.  In Murphy, the plaintiff, who was a consultant paid by commission, alleged that the defendant fraudulently misrepresented the amount billed to a client in order to reduce the plaintiff's commission, and sent him a check which misrepresented the amount that should have been paid.  Id. at 663-64.  The court held that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state."  Id. at 664.

In this case, however, the plaintiffs have not shown the necessary connection between a false statement by the individual defendants and New Hampshire.  Miller circulated his fact sheet in Virginia.  The plaintiffs do not allege that he intentionally provided it to a New Hampshire Sir Knight or that any New Hampshire Sir Knight saw the sheet.  Owen's email was sent to New Hampshire but stated only that the Washington Grand Lodge had declared the Rectified Rite to be irregular.  Although the plaintiffs dispute whether the Rectified Rite is irregular, they do not dispute that the Washington Grand Lodge declared that to be so.  Therefore, Owen's email was not false.

Bousquet had telephone conversations with Sir Knight Tsirimokos, who lived in New Hampshire and was Chairman of the

Grand Encampment Committee on Templar Jurisprudence.  Bousquet
informed Tsirimokos that he could not attend the Grand Conclave
of Oregon.  The plaintiffs have not alleged or shown that
Bousquet falsely stated that Tsirimokos could not attend the
Grand Conclave.

Correspondence and telephone calls are not sufficient to
show contacts for jurisdictional purposes unless the plaintiffs
can show a material connection between the correspondence and
their claims.[7]  <u>Platten</u>, 437 F.3d at 138.  Because the individual
defendants' communications are not materially connected to the
plaintiffs' claims, they do not satisfy the relatedness
requirement.

2.  <u>Purposeful Availment</u>

The Conference challenges personal jurisdiction on the
purposeful availment requirement.  Purposeful availment "is only
satisfied when the defendant purposefully and voluntarily directs
his activities toward the forum so that he should expect, by
virtue of the benefit he receives, to be subject to the court's
jurisdiction based on these contacts."  <u>United States v. Swim Am.
Bank, Ltd.</u>, 274 F.3d 610, 624 (1st Cir. 2001).  The plaintiffs

_____

[7]The First Circuit has limited the holding in <u>Murphy</u>.  <u>See
Platten</u>, 437 F.3d at 138 n.13.

rely on the "effects test" that focuses "on the defendant's intent to cause injury in the forum . . . ."  Id.

The plaintiffs contend that the purposeful availment element is satisfied as to the Conference because it published a report in which it declared that the Rectified Rite and the Grand Encampment were irregular.  The report was available on the Conference's website and was therefore available in New Hampshire.  The Conference contends that the website does not show sufficient intent to target New Hampshire.

Most courts that have considered the question have concluded that a website available to all is not directed at the residents of a particular state and therefore is insufficient to satisfy the purposeful availment element.  Emissive Energy Corp. v. SPA-Simrad, Inc., 788 F. Supp. 2d 40, 48 (D.R.I. 2011) (citing cases); see also Edvisors Network, Inc. v. Educ. Advisors, Inc., 755 F. Supp. 2d 272, 284 (D. Mass. 2010) (in trademark infringement website with infringing material directed majority of harm at Massachusetts company that owned the trademark).  The plaintiffs provide no evidence that the Conference directed its report to New Hampshire.  Therefore, the purposeful availment element is not satisfied here.

In addition, as the individual defendants argue, the plaintiffs have not shown that they suffered any injury in New

13

Hampshire due to any alleged misrepresentations.  The only injury
the plaintiffs reference is that Sir Knight Tsirimokos was barred
from attending a meeting in <u>Oregon</u>, not New Hampshire.
Therefore, the plaintiffs have not made a prima facie case for
the purposeful availment element.


<u>Conclusion</u>

For the foregoing reasons, the plaintiffs' motion for
reconsideration (document no. 37) is denied.

Because all claims against all defendants have been
dismissed due to a lack of personal jurisdiction, the court shall
enter judgment accordingly and close the case.


SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 6, 2012

cc:  Jennifer Turco Beaudet, Esquire
     Mark A. Darling, Esquire
     Kathleen A. Davidson, Esquire
     Lawrence B. Gormley, Esquire
     Jamie N. Hage, Esquire
     Thomas J. Pappas, Esquire
     Michael D. Ramsdell, Esquire